**S. CHANDLER VISHER** – S.B.N. 52957
268 Bush Street #4500
San Francisco, CA 94194
Telephone: (415) 901-0500
Facsimile: (415) 904-0504
chandler@visherlaw.com

BRIAN J. WANCA (*pro hac to be submitted*)
WALLACE C. SOLBERG (*pro hac to be submitted*)
**ANDERSON & WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
wsolberg@andersonwanca.com

*Plaintiffs' Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAELA FOLEY, CORNELIUS LEWIS, ROBERT BURGY, JOHN SOOTS, and JAMES HURD, individually and as the representatives of classes of similarly-situated persons,<br><br>            Plaintiffs,<br><br>      v.<br><br>DATANYZE, LLC, a Delaware limited liability company,<br><br>            Defendant. | No.<br><br>**CLASS ACTION COMPLAINT** |

# CLASS ACTION COMPLAINT

Plaintiffs Michaela Foley ("Foley"), Cornelius Lewis ("Lewis"), Robert Burgy ("Burgy"), John Soots ("Soots"), and James Hurd ("Hurd") (collectively "Plaintiffs), individually and on behalf of all others similarly situated, through their attorneys, allege the following against Defendant Datanyze, LLC ("Datanyze" or "Defendant"):

## NATURE OF ACTION

1.    Plaintiffs and members of the proposed classes seek statutory damages, an injunction, and other relief for violations of their right of publicity, as protected by statutes in the following states: California, Nevada, Indiana, and Alabama.

2.    As discussed in detail below, each of the aforementioned states prohibits the use of an individual's name and other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See*, California Civil Code § 3344, *et seq*.; Nevada Right of Publicity Statute ("NRPS"), NV ST § 597.770, *et seq*.; Indiana Publicity Code, IC 32-36-1, *et seq*.; and the Alabama Right of Publicity Act ("ARPA") Ala. Code § 6-5-770, *et seq*.

3.    Datanyze provides an internet-based business search platform for sales and marketing professionals. Users of Datanyze's platform can obtain personal information of various individuals, including their identifying information ("profiles"), based on particular search queries. After a free trial period, during which a set amount of profiles can be viewed, users are required to purchase subscriptions to view additional profiles.

4.    Plaintiffs and the Classes have no relationship with Datanyze. More importantly, Plaintiffs and the Classes never provided Datanyze with consent to use their identity to advertise subscriptions to its platform.

5.    Despite failing to obtain consent from Plaintiffs and the Classes, Datanyze nevertheless utilized their personal identifying information for the purpose of enticing users of its platform to enter into paid subscriptions for additional access to profiles contained in the platform. In other words, Datanyze used Plaintiffs' and other Class Members' identities for commercial purposes without their permission in violation of the aforementioned state laws.

6.    Plaintiffs bring this Complaint seeking an order (i) declaring that Datanyze's conduct violates their right of publicity as defined by the various statutes, (ii) requiring that Datanyze cease the unlawful activities described herein, (iii) awarding Plaintiffs and the proposed Classes statutory damages in an amount prescribed by statute per violation or an amount equal to actual damages/profits, whichever is greater, and (iv) an award for punitive damages, if warranted, and (v) awarding attorneys' fees and costs where permitted by law.

## PARTIES

7.    Plaintiff Michaela Foley is a citizen of the State of California residing in San Francisco in San Francisco County.

8.    Plaintiff Cornelius Lewis is a citizen of the State of California residing in Hayward in Alameda County.

9.    Plaintiff Robert Burgy is a citizen of the State of Nevada residing in Las Vegas.

10.    Plaintiff John Soots is a citizen of the State of Indiana residing in Bloomington.

11.    Plaintiff James Hurd is a citizen of the State of Alabama residing in Millry.

12.    Defendant Datanyze is a Delaware limited liability company with its headquarters located in Durham, North Carolina.  Through its proprietary software, Datanyze seeks out and compiles identifying information of California, Nevada, Indiana and Alabama citizens and uses that information to market its online platform to California, Nevada, Indiana and Alabama citizens and others without written consent.

## JURISDICTION AND VENUE

13.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties – Plaintiffs Foley and Lewis are citizens of California, Plaintiffs Burgy, Soots and Hurd are citizens of other states, and Datanyze is a Delaware limited liability company with its principal place of business in Durham, North Carolina.  Further, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, with at least 100 or more potential Class Members

CLASS ACTION COMPLAINT

based on the number of individuals identified in Datanyze's platform and the damages available through the various statutes.

14.     This Court has personal jurisdiction over Datanyze because it conducts business in this District, and some of the unlawful conduct alleged in the Complaint occurred in and/or was directed to it. Datanyze sought out and compiled the names and other identifying information of the Plaintiffs Michaela Foley, Cornelius Lewis, and other California citizens and used that information for marketing to California citizens and others without written consent. In so doing, Datanyze's statutory violations related to the matters complained of herein occurred in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims of Plaintiffs Michaela Foley and Cornelius Lewis occurred in this District. Datanyze, through its proprietary platform, collected and used Michaela Foley's and Cornelius Lewis' personal information for commercial purposes without their consent. In so doing, Datanyze violated their rights of publicity, as well as the right of publicity of other California putative Class Members residing in this District.

16.     <u>Intradistrict Assignment</u>:  Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the San Francisco Division of the Northern District of California (the "Division") is proper because some of the conduct alleged in the Complaint occurred in San Francisco County where Plaintiff Michaela Foley resides. By using Michaela Foley's personal information without her consent and other San Francisco County and San Francisco Division class members' consent, a substantial part of the acts and omissions giving rise to the statutory violations complained of occurred in this Division.

## **CALIFORNIA CIVIL CODE § 3344**

17.     Pursuant to California Civil Code § 3344, the use of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, is prohibited.

CLASS ACTION COMPLAINT

18.    Section 3344 provides for damages for a violation in an amount equal to the greater of $750 or the actual damages suffered as a result of the unauthorized use. Punitive damages may also be awarded, as well as attorney's fees and costs.

### NEVADA RIGHT OF PUBLICITY STATUTE

19.    NRPS recognizes that "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person." NV ST § 597.790.

20.    NRPS prohibits the commercial use of an individual's name, voice, signature, photograph, or likeness within Nevada without first obtaining written consent. *Id.*

21.    A violation of NRPS may result in statutory damages in the amount of $750 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. NV ST § 597.810. NRPS further provides that punitive damages may be rewarded for willful violations and authorizes the issuance of injunctive relief where appropriate. *Id.*

### INDIANA CODE § 32-36-1, *et seq.*

22.    Under Indiana's Publicity Code, an individual's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism (*i.e.* "identity") is afforded protection from unauthorized commercial use provided the individual's identity has commercial value.[1] IC 32-36-1-6, 32-36-1-8. In other words, Indiana's Publicity Code protects an individual's right of publicity.

23.    Section 32-36-1-8 of the Publicity Code prohibits the use of an individual's personality for a commercial purpose within Indiana without first obtaining prior written permission.

---

[1] The Code defines and refers to such "identity" as "personality". *See* IC 32-36-1-6.

CLASS ACTION COMPLAINT

**ALABAMA RIGHT OF PUBLICITY ACT – Ala. Code § 6-5-770, *et seq.***

24.    The Alabama Right of Publicity Act ("ARPA") protects "those attributes of a person that serve to identify that person to an ordinary viewer or listener, including, but not limited to name, signature, [or] …. likeness." AL ST § 6-5-772.

25.    ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

26.    Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  Al St § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

**FACTUAL ALLEGATIONS**

27.    Datanyze provides a business search platform to current and prospective customers. The platform enables users to connect to business-to-business sales prospects for their own business-to-business sales, marketing, and recruiting activities. The platform is accessible at Datanyze's website, www.datanyze.com, or through a Google Chrome extension. The platform is geared for sales and marketing professionals.

28.    For its platform, Datanyze has collected information regarding business people and companies to create profiles of both. The resulting directory of profiles is then made available to users of the platform. Information that may be provided in a business person's profile includes name, email addresses (both business and personal), job title and department, phone number (general or direct business numbers, faxes, and/or mobile numbers), company name, postal address of company and business-related postal address of the person, employment history, and education history. These profiles may also include links to articles by, about, or quoting the person and links to the person's social media profiles.

29.    Datanyze claims that its platform contains over 120 million people profiled with 84 million email addresses and 63 million direct dial numbers.

CLASS ACTION COMPLAINT

30.     Users of the platform can access it at Datanyze's website. There, the user can find and filter information about companies in diverse industries. Once a company is selected, information about it and its employees, including the executives, key decision makers, and recently updated team members becomes available. From there, the user can select a specific employee to view identifying information of that person as stored on the platform. Profiles show such information as the employee's picture, work biography, education, work and cellular phone numbers, email addresses (both work and personal), and office address.

31.     Information on the platform can also be accessed by using Datanyze's Google Chrome extension in conjunction with LinkedIn. LinkedIn is the world's largest professional network, with more than 875 million members.

32.     After a user has downloaded Datanyze's Google Chrome extension, the Datanyze icon appears as a tab on LinkedIn's webpage. When a Datanyze user views an individual member on LinkedIn, the user can click on the Datanyze tab to see whether Datanyze has a profile of that member on its platform. If a profile exists, the user can view the profile for additional contact and identifying information as discussed above. In seemingly all cases, the Datanyze profile will contain more contact information than provided by LinkedIn.

33.     Before Datanyze users are allowed to view an employee profile either on the website or through LinkedIn, they are required to enter into a paid subscription with Datanyze or sign up for a 90-day free trial. These profiles are not visible without first signing up for a free trial or entering into a paid subscription.

34.     With Datanyze's 90-day free trial, prospective customers are allotted ten "credits" a month. These "credits" allow the customer to access ten profiles on the platform. After the 90-day trial is complete, or when the allotted "credits" are used, prospective customers are required to enter into paid subscriptions to view additional profiles. Employee profiles cannot be purchased individually on the platform.

35.     Datanyze offers several paid subscription plans. Customers can select a $29 monthly plan, which provides access to 80 profiles a month. This plan can be reduced to $21 a month if paid

CLASS ACTION COMPLAINT

yearly. Datanyze also has a $55 monthly plan. This plan provides access to 160 profiles a month. It too can be reduced, to $39 a month, if paid yearly.

36.     Profiles on Datanyze's platform provide enough information to identify an individual. In fact, Datanyze guarantees the accuracy of its contact information.

37.     Datanyze uses the 90-day free trial, along with the limited access to employee profiles, to advertise and convince prospective customers to purchase its monthly subscription services, whereby those customers can access and retrieve employee profiles on any individual in Datanyze's database. In other words, the free trial together with the limited free profile access is part of Datanyze's overall effort to sell its monthly subscriptions.

38.     Plaintiffs have no relationship with Datanyze. They neither utilize the platform nor subscribe to it.

39.     Plaintiffs did not give consent, written or otherwise, to Datanyze to use their names, likenesses, personal information, or identities in any way. Nor did Plaintiffs provide Datanyze with written consent to use their identities for commercial purposes. Had Datanyze requested their consent, Plaintiffs would not have provided it.

40.     Plaintiffs do not know how Datanyze obtained their names and identifying information. On information and belief, Datanyze compiled their information from online sources, including their LinkedIn accounts, social media accounts, and employers' websites.

41.     Datanyze did not obtain written consent from Plaintiffs or their employers prior to compiling their personal information to create employee profiles for its platform. Datanyze also did not obtain prior written permission to use those profiles to advertise paid subscriptions for its platform. On information and belief, Datanyze did not obtain written permission from any sources from which it compiled Plaintiffs' personal identifying information.

42.     Plaintiffs have intellectual property and privacy interests in their names, likenesses, and identities recognized by statutory law. Plaintiffs have the right to exclude anyone from using their identities for commercial purposes without their written permission.

43.    Datanyze has injured Plaintiffs by using their identities for its own commercial purposes without compensation or permission.

44.    Datanyze's illegal actions caused Plaintiffs distress by using their identities to promote a product that they have no interest in promoting. Plaintiffs are further distressed by the fact that Datanyze's use of their identities in this manner encourages and enables harassing and uninvited marketing and sales communications with them.

**Facts relating to Michaela Foley (California)**

45.    As of May 2024, Michaela Foley's identity was used in Datanyze's platform. Her profile is contained within Datanyze's database and is accessible on LinkedIn using Datanyze's Google Chrome extension.

46.    Foley's LinkedIn page does not provide any contact information. However, when using the Datanyze Google Chrome extension on Foley's LinkedIn page, Foley's name and mobile phone number are provided from Datanyze's platform. A more comprehensive profile on Foley can then be saved to a user's Datanyze account, which contains this information along with additional information including Foley's previous employment history.

47.    Potential customers availing themselves of Datanyze's 90-day free trial are able to view and, on information and belief, have viewed Foley's profile. Thus, Foley's identity has been used by Datanyze to market its platform.

48.    Datanyze's purpose behind providing access to Foley's profile on its platform is, in part, to solicit the purchase of paid subscriptions.

49.    Foley has no relationship with Datanyze.  She neither utilizes the platform nor subscribes to it.

50.    Foley did not give consent, written or otherwise, to Datanyze to use her name, likeness, personal information, or identity in any way. Nor did Foley provide Datanyze with consent to use her identity for commercial purposes. Had Datanyze requested her consent, Foley would not have provided it.

CLASS ACTION COMPLAINT

51.    Foley does not know how Datanyze obtained her name and identifying information. On information and belief, Datanyze compiled her information from online sources, including her LinkedIn account, social media accounts, and employer's website.

52.    Datanyze did not obtain consent from Foley to compiling her personal information to create an employee profile for its platform. Datanyze also did not obtain prior permission to use that profile to advertise paid subscriptions for its platform. On information and belief, Datanyze did not obtain permission from any sources from which it compiled Foley's personal identifying information.

53.    Foley has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory and common law. Foley has the right to exclude anyone from using her identity for commercial purposes without his permission.

54.    Datanyze has injured Foley by using her identity for its own commercial purposes without compensation or permission.

55.    Datanyze's illegal actions caused Foley distress by using her identity to promote a product that she has no interest in promoting. Foley is further distressed by the fact that Datanyze's use of her identity in this manner encourages and enables harassing and uninvited marketing and sales communications with her.

**Facts relating to Cornelius Lewis (California)**

56.    As of May 2024, Cornelius Lewis' identity was used in Datanyze's platform. His profile is contained within Datanyze's database and is accessible on LinkedIn using Datanyze's Google Chrome extension.

57.    Lewis' LinkedIn page does not provide any contact information. However, when using the Datanyze Google Chrome extension on Lewis' LinkedIn page, Lewis' name, personal email address, and employer are provided from Datanyze's platform. A more comprehensive profile on Lewis can then be saved to a user's Datanyze account, which contains this information along with additional information including Lewis' current employer's address, as well as his previous employment and education history.

CLASS ACTION COMPLAINT

58.    Potential customers availing themselves of Datanyze's 90-day free trial are able to view and, on information and belief, have viewed Lewis' profile. Thus, Lewis' identity has been used by Datanyze to market its platform.

59.    Datanyze's purpose behind providing access to Lewis' profile on its platform is, in part, to solicit the purchase of paid subscriptions.

60.    Lewis has no relationship with Datanyze. He neither utilizes the platform nor subscribes to it.

61.    Lewis did not give consent, written or otherwise, to Datanyze to use his name, likeness, personal information, or identity in any way. Nor did Lewis provide Datanyze with consent to use his identity for commercial purposes. Had Datanyze requested his consent, Lewis would not have provided it.

62.    Lewis does not know how Datanyze obtained his name and identifying information. On information and belief, Datanyze compiled his information from online sources, including his LinkedIn account, social media accounts, and employer's website.

63.    Datanyze did not obtain consent from Lewis or his employer prior to compiling his personal information to create an employee profile for its platform. Datanyze also did not obtain prior permission to use that profile to advertise paid subscriptions for its platform. On information and belief, Datanyze did not obtain permission from any sources from which it compiled Lewis' personal identifying information.

64.    Lewis has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory and common law. Lewis has the right to exclude anyone from using his identity for commercial purposes without his permission.

65.    Datanyze has injured Lewis by using his identity for its own commercial purposes without compensation or permission.

66.    Datanyze's illegal actions caused Lewis distress by using his identity to promote a product that he has no interest in promoting. Lewis is further distressed by the fact that Datanyze's

CLASS ACTION COMPLAINT

use of his identity in this manner encourages and enables harassing and uninvited marketing and sales communications with him.

### **Facts Relating to Robert Burgy (Nevada)**

67.     As of May 2024, Robert Burgy's identity was used in Datanyze's platform. His profile is contained within Datanyze's database and is accessible on LinkedIn using Datanyze's Google Chrome extension.

68.     Burgy's LinkedIn page does not provide any contact information. However, when using the Datanyze Google Chrome extension on Burgy's LinkedIn page, Burgy's name, employer, job title, office email address and telephone number are provided from Datanyze's platform. A more comprehensive profile on Burgy can then be saved to a user's Datanyze account, which contains this information along with additional information including Burgy's current office address and previous employment history.

69.     Potential customers availing themselves of Datanyze's 90-day free trial are able to view and, on information and belief, have viewed Burgy's profile. Thus, Burgy's identity has been used by Datanyze to market its platform.

70.     Datanyze's purpose behind providing access to Burgy's profile on its platform is, in part, to solicit the purchase of paid subscriptions.

71.     Burgy has no relationship with Datanyze. He neither utilizes the platform nor subscribes to it.

72.     Burgy did not give consent, written or otherwise, to Datanyze to use his name, likeness, personal information, or identity in any way. Nor did Burgy provide Datanyze with written consent to use his identity for commercial purposes, as required by Nevada law. Had Datanyze requested his consent, Burgy would not have provided it.

73.     Burgy does not know how Datanyze obtained his name and identifying information. On information and belief, Datanyze compiled his information from online sources, including his LinkedIn account, social media accounts, and employer's website.

CLASS ACTION COMPLAINT

74.     Datanyze did not obtain written consent from Burgy prior to compiling his personal information to create an employee profile for its platform. Datanyze also did not obtain prior written permission to use that profile to advertise paid subscriptions for its platform. On information and belief, Datanyze did not obtain written permission from any sources from which it compiled Burgy's personal identifying information.

75.     Burgy has intellectual property and privacy interests in his name, likeness, and identity recognized by Nevada statutory law. Burgy has the right to exclude anyone from using his identity for commercial purposes without his written permission.

76.     Datanyze has injured Burgy by using his identity for its own commercial purposes without compensation or written permission.

77.     Datanyze's illegal actions caused Burgy distress by using his identity to promote a product that he has no interest in promoting. Burgy is further distressed by the fact that Datanyze's use of his identity in this manner encourages and enables harassing and uninvited marketing and sales communications with him.

**Facts relating to John Soots (Indiana)**

78.     As of May 2024, John Soots' identity was used in Datanyze's platform. His profile is contained within Datanyze's database and is accessible on LinkedIn using Datanyze's Google Chrome extension.

79.     Soot's LinkedIn page does not provide any contact information. However, when using the Datanyze Google Chrome extension on Soots's LinkedIn page, Soot's name, employer, job title, email address and telephone number are provided from Datanyze's platform.

80.     Potential customers availing themselves of Datanyze's 90-day free trial are able to view and, on information and belief, have viewed Soots's profile. Thus, Soots's identity has been used by Datanyze to market its platform.

81.     Datanyze's purpose behind providing access to Soots's profile on its platform is, in part, to solicit the purchase of paid subscriptions.

CLASS ACTION COMPLAINT

82.     Soots has no relationship with Datanyze. He neither utilizes the platform nor subscribes to it.

83.     Soots did not give consent, written or otherwise, to Datanyze to use his name, likeness, personal information, or identity in any way. Nor did Soots provide Datanyze with written consent to use his identity for commercial purposes, as required by Indiana law. Had Datanyze requested his consent, Soots would not have provided it.

84.     Soots does not know how Datanyze obtained his name and identifying information. On information and belief, Datanyze compiled his information from online sources, including his LinkedIn account, social media accounts, and employer's website.

85.     Datanyze did not obtain written consent from Soots prior to compiling his personal information to create an employee profile for its platform. Datanyze also did not obtain prior written permission to use that profile to advertise paid subscriptions for its platform. On information and belief, Datanyze did not obtain written permission from any sources from which it compiled Soots's personal identifying information.

86.     Soots has intellectual property and privacy interests in his name, likeness, and identity recognized by Indiana statutory law. Soots has the right to exclude anyone from using his identity for commercial purposes without his written permission.

87.     Datanyze has injured Soots by using his identity for its own commercial purposes without compensation or written permission.

88.     Datanyze's illegal actions caused Soots distress by using his identity to promote a product that he has no interest in promoting. Soots is further distressed by the fact that Datanyze's use of his identity in this manner encourages and enables harassing and uninvited marketing and sales communications with him.

**Facts relating to James Hurd (Alabama)**

89.     As of June 2024, Hurd's identity was used in Datanyze's platform. His profile is contained within Datanyze's database and is accessible on LinkedIn using Datanyze's Google Chrome extension.

13

90.    Hurd's LinkedIn page does not provide any contact information. However, when using the Datanyze Google Chrome extension on Hurd's LinkedIn page, Hurd's name and email address are provided from Datanyze's platform. A more comprehensive profile on Hurd can then be saved to a user's Datanyze account, which contains this information along with additional information including Hurd's current and previous employment experience and education history.

91.    Potential customers availing themselves of Datanyze's 90-day free trial are able to view and, on information and belief, have viewed Hurd's profile. Thus, Hurd's identity has been used by Datanyze to market its platform.

92.    Datanyze's purpose behind providing access to Hurd's profile on its platform is, in part, to solicit the purchase of paid subscriptions.

93.    Hurd did not give consent, written or otherwise, to Datanyze to use his name, likeness, personal information, or identity in any way. Nor did Hurd provide Datanyze with consent to use his identity for commercial purposes, as required by Alabama law. Had Datanyze requested his consent, Hurd would not have provided it.

94.    Hurd does not know how Datanyze obtained his name and identifying information. On information and belief, Datanyze compiled his information from online sources, including his LinkedIn account, social media accounts, and employer's website.

95.    Datanyze did not obtain consent from Hurd or his employer prior to compiling his personal information to create an employee profile for its platform. Datanyze also did not obtain prior permission to use that profile to advertise paid subscriptions for its platform. On information and belief, Datanyze did not obtain permission from any sources from which it compiled Hurd's personal identifying information.

96.    Hurd has intellectual property and privacy interests in his name, likeness, and identity recognized by Alabama statutory law which protects against the unauthorized commercial use of a person's indicia of identity. Hurd has the right to exclude anyone from using his identity for commercial purposes without his permission.

CLASS ACTION COMPLAINT

97.     Datanyze has injured Hurd by using his identity for its own commercial purposes without compensation or permission.

98.     Datanyze's illegal actions caused Hurd distress by using his identity to promote a product that he has no interest in promoting. Hurd is further distressed by the fact that Datanyze's use of his identity in this manner encourages and enables harassing and uninvited marketing and sales communications with him.

## CLASS ALLEGATIONS

99.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this class action on behalf of themselves and classes of similarly situated persons.

100.    Each of the Plaintiffs seeks to represent a class of individuals comprised of citizens and residents of the State from which they are citizens and residents.

101.    The Classes that Plaintiffs seek to represent are defined as follows:

**A. California Class (Foley and Lewis)**
All current and former California residents who are not subscribers to Datanyze's platform and whose name or identity has been used to market paid subscriptions for Datanyze's platform.

**B. Nevada Class (Burgy)**
All current and former Nevada residents who are not subscribers to Datanyze's platform and whose name or identity has been used to market paid subscriptions for Datanyze's platform.

**C. Indiana Class (Soots)**
All current and former Indiana residents who are not subscribers to Datanyze's platform and whose name or identity has been used to market paid subscriptions for Datanyze's platform.

**D. Alabama Class (Hurd)**
All current and former Alabama residents who are not subscribers to Datanyze's platform and whose name or identity has been used to market paid subscriptions for Datanyze's platform.

102.    Excluded from the Classes are Datanyze, its officers, directors, shareholders, members, managers, employees, attorneys (and attorney family members), and members of the

federal judiciary. Plaintiffs reserve the right to amend the Class definitions upon completion of class discovery when the contours and the parameters of the Classes become more apparent.

103. **Numerosity (Fed. R. Civ. P. 23(a)(1)).** On information and belief, the members of the classes are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Datanyze on its website, Plaintiffs reasonably believe that each Class comprises thousands of current and former California, Nevada, Indiana or Alabama citizens and residents whose profiles are compiled and maintained in Datanyze's database and searchable on its platform. The exact number of persons in each class can be determined from records maintained by Datanyze, but certainly exceeds 40, and is estimated to be in the thousands.

104. **Commonality (Fed. R. Civ. P. 23(a)(2))**. Many common questions of law and fact that exist as to Plaintiffs and members of the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to:

(a)     whether Datanyze uses Plaintiffs' and Class Members' identities in search results and profile information for its own commercial benefit;

(b)     whether the conduct described herein constitutes a violation of right of publicity statues for California, Nevada, Indiana and Alabama.

(c)     whether Datanyze's violations of the various right of publicity statues were willful, which would entitle Plaintiffs and the Classes to punitive damages; and

(d)     whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

105.    Plaintiffs and the members of the Classes have a commonality of interest in the subject matter of the lawsuit and remedies sought.

106.    **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiffs' claims are typical of the claims of the members of the Classes. Datanyze's misuse of Plaintiffs' and Class Members' identities, personal information, and other identifying information was the same for each.

107.    **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)).** As demonstrated above, Datanyze has acted on grounds generally applicable to the proposed class such that final injunctive relief is appropriate with respect to each Class as a whole.

108.    **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide, and Plaintiffs have no interest adverse to any member of the Classes. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and their Classes.

109.    **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)).** Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)    Proof of Datanyze's liability on Plaintiffs' claims will also prove liability for the claims of the Classes without the need for separate or individualized proceedings;

(b)    Evidence regarding defenses or any exceptions to liability that Datanyze may assert and attempt to prove will come from Datanyze's records and will not require individualized or separate inquiries or proceedings;

(c)    Datanyze has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d)    The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Datanyze economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs, without the risk of inconsistent judgments; and

(e)    This case is inherently manageable as a class action in that:

CLASS ACTION COMPLAINT

(i)     Datanyze's records will enable Plaintiffs to readily identify class members and establish liability and damages;

(ii)     Liability and damages can be established for Plaintiffs and each Class with the same common proofs;

(iii)     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

(iv)     A class action will contribute to uniformity of decisions concerning Datanyze's practices; and

(v)     As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

### COUNT I - VIOLATION OF CALIFORNIA CIVIL CODE, §3344, *et seq.*

110.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-18, 27-66, and 99-109 of this Complaint.

111.     As stated, California's Right of Publicity Statute, California Civil Code § 3344, prohibits the knowing use of "another's name, voice, signature, photograph, or likeness, in any manner … without such person's prior consent."

112.     Section 3344 provides for damages for any such violation in the amount of $750 or the actual damages suffered on account of the unauthorized use. It also provides for the possibility of an award for punitive damages. *Id.*

113.     By engaging in the foregoing acts and omissions, Datanyze used Lewis' and Foley's and California Class Members' names and identities for commercial purposes without first obtaining prior consent.

114.     Each use of Lewis' and Foley's and Class Members' identities is a separate and distinct violation of § 3344 giving rise to damages.

115.     As a result of Datanyze's violations, Lewis and Foley and the California Class Members have suffered injury to their privacy rights as well as economic damages. Lewis, Foley and the California Class Members have been denied the commercial value of their identities, which

Datanyze used without permission from or compensation to Lewis and Foley and the Class Members. Lewis and Foley and California Class Members were denied their statutorily protected right to control how their names and identities are used and suffered damages based on that misuse.

116.    Lewis and Foley, on behalf of themselves and the California Class, seek statutory damages for each violation of § 3344, or alternatively, actual damages suffered by Lewis and Foley and California Class Members for the unauthorized use, whichever is greater; punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

**COUNT II – VIOLATION OF NEVADA RIGHT OF PUBLICITY STATUTE**

117.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-16, 19-21, 27-44, 67-77, and 99-109 of this complaint.

118.    As stated, Nevada's Right of Publicity Statute, NV ST. § 597.810, prohibits "any commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use."

119.    Section 597.810 provides for actual damages for any such violation, but not less than $750, injunctive relief, and "[e]xemplary or punitive damages, if the trier of fact finds that the defendant knowingly made use of the name, voice, signature, photograph or likeness of another person without the consent."

120.    By engaging in the foregoing acts and omissions, Datanyze used Burgy's and Nevada Class Members' names and identities for commercial purposes, in Nevada and elsewhere, without first obtaining prior consent.

121.    Each use of Burgy's and Nevada Class Members' names and identities is a separate and distinct violation of Section 597.810 giving rise to damages.

122.    As a result of Datanyze's violations, Burgy and the Nevada Class have suffered injury to their privacy rights as well as economic damages. Burgy and the Nevada Class Members have been denied the commercial value of their names and identities, which Datanyze used without permission from or compensation to Burgy and the Nevada Class. Burgy and Nevada Class

CLASS ACTION COMPLAINT

Members were denied their statutorily protected right to control how their names and identities are used and suffered damages based on that misuse.

123.    Burgy, on behalf of himself and the Nevada Class, seeks damages for each violation of Section 597.810, not less than $750; exemplary or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT III – VIOLATION OF INDIANA PUBLICITY STATUTE

124.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-16, 22-23, 27-44, 78-88, and 99-109 of this Complaint.

125.    As stated, Indiana's Publicity Code, IC § 32-36-1-8, prohibits the commercial use of an individual's "personality," which includes the individual's name and other identifying characteristics, so long as they have value, without written consent.

126.    Section 32-36-1-10 of the Code provides for $1,000 or actual damages, whichever is greater, and treble or punitive damages if the violation is "knowing, willful, or intentional." The Indiana statute further provides for injunctive relief. IC § 32-36-1-12.

127.    By engaging in the foregoing acts and omissions, Datanyze used Soots' and Indiana Class Members' personalities for commercial purposes, in Indiana and elsewhere, without first obtaining written consent. The use of Soots' and Indiana Class Members' personalities in this manner demonstrates that they have commercial value.

128.    Each use of Soots' and Indiana Class Members' personalities is a separate and distinct violation giving rise to damages.

129.    As a result of Datanyze's violations, Soots and the Indiana Class have suffered injury to their privacy rights as well as economic damages. Soots and the Indiana Class Members have been denied the commercial value of their personalities, which Datanyze used without permission from or compensation to Soots and the Indiana Class. Soots and Indiana Class Members were denied their statutorily protected right to control how their personalities are used and suffered damages based on that misuse.

130.     Soots, on behalf of himself and the Indiana Class, seeks damages for each violation of IC § 32-36-1-8; treble or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT IV – VIOLATION OF ALABAMA RIGHT OF PUBLICITY STATUTE

131.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1-16, 24-26, 27-44, 89-98, and 99-109 of this Complaint.

132.     As stated, ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

133.     Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

134.     By engaging in the foregoing acts and omissions, Datanyze used Hurd's and Alabama Class Members' identities for commercial purposes without first obtaining prior consent.

135.     Each use of Hurd's and Alabama Class Members' identity is a separate and distinct violation of ARPA.

136.     As a result of Datanyze's violations, Hurd and the Alabama Class have suffered injury to their privacy rights as well as economic damages. Hurd and the Alabama Class Members have been denied the commercial value of their identities, which Datanyze used without permission from or compensation to Hurd and the Alabama Class. Hurd and Alabama Class Members were denied their statutorily protected right to control how their identities are used and suffered damages based on that misuse.

137.     Hurd, on behalf of himself and the Alabama Class, seeks damages for each violation of ARPA in the amount of $5,000 per action, or compensatory damages including the Datanyze's

CLASS ACTION COMPLAINT

profits; any other damages available under Alabama law, including punitive damages; injunctive relief; prejudgment interest; and an award of attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, Michaela Foley, Cornelius Lewis, Robert Burgy, John Soots and James Hurd, individually and on behalf of all other similarly situated persons, demand judgment in their favor and against Defendant, Datanyze, LLC., as follows:

A. Certifying this case as a class action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B. Declaring that Datanyze's actions, as described herein, violate the right of publicity statutes in California, Nevada, Indiana, and Alabama;

C. Awarding statutory damages to Plaintiffs and the Classes for each violation of the respective statutes, or alternatively, actual damages and profits derived from the unauthorized use of the Plaintiffs' or Class Members' identities, whichever is greater, plus prejudgment interest;

D. Awarding punitive or exemplary damages to Plaintiffs and the Classes for each violation of the respective statutes, if appropriate;

E. Enjoining Datanyze from committing further violations of their right of publicity;

F. Awarding Plaintiffs reasonable attorneys' fees and costs incurred in filing and prosecuting this action;

1    G.    Awarding such other and further relief as this Court deems appropriate and just.

2

3    DATED: October 23, 2024                    By: /s/ S. Chandler Visher
4                                               S. Chandler Visher – S.B.N. 52957
                                                268 Bush St., #4500
5                                               San Francisco, CA  94104
                                                Telephone:  415-901-0500
6                                               chandler@visherlaw.com

7                                               And

8
                                                Brian J. Wanca (*pro hac to be submitted*)
9                                               Wallace C. Solberg (*pro hac to be submitted*)
                                                ANDERSON + WANCA
10                                              3701 Algonquin Road, Suite 500
                                                Rolling Meadows, IL 60008
11                                              Telephone:  847-368-1500
                                                bwanca@andersonwanca.com
12                                              wsolberg@andersonwanca.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT